UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
REYNALDO DE SOTO SOTO,

               Plaintiff,

                 -against-

JULIO H. BAEZ LOLO GROCERY CORP,
B BROTHER GROCERY CORP,
RICHARD O. BAEZ, and
PASQUALE ORTIZ,

               Defendants.
-----------------------------------------------------------X

REPORT AND
<u>RECOMMENDATION</u>
22 CV 700 (HG)(RML)

LEVY, United States Magistrate Judge:

       By order dated August 30, 2022, the Honorable Hector Gonzalez, United States

District Judge, referred plaintiff's motion for default judgment to me for report and

recommendation.  For the reasons stated below, I respectfully recommend that plaintiff's

motion be granted, and that plaintiff be awarded $100,537.56 in damages, plus pre- and post-

judgment interest, and $7,309.50 in attorney's fees and costs.

<h3 style="text-align:center">BACKGROUND AND FACTS</h3>

       Plaintiff Reynaldo De Soto Soto ("plaintiff") commenced this wage and hour

action on February 8, 2022, against defendants Julio H. Baez Lolo Grocery Corp ("Lolo

Grocery"), B Brother Grocery Corp ("Brother Grocery," together with Lolo Grocery, the

"corporate defendants"), Richard O. Baez ("Baez"), and Pasquale Ortiz ("Ortiz," together with

Baez, "individual defendants," or together with corporate defendants, the "defendants")

asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and

the New York Labor Law ("NYLL") §§ 190, *et seq.*  (Complaint, dated Feb. 8, 2022

("Compl."), Dkt. No. 1.)  The individual defendants are alleged to be owners, officers,

principals, or agents of Lolo Grocery, a domestic corporation located at 212 Ralph Avenue, Brooklyn, New York, and Brother Grocery, a domestic corporation located at 325 Quincy Street, Brooklyn, New York.  (Id. ¶¶ 9-36.)  Defendants allegedly employed plaintiff as a deli counter worker, cook, and food preparer from approximately March 22, 2021 to on or about November 6, 2021.  (Id. ¶ 6.)

All defendants were properly served with the summons and the complaint.  (See Affidavits of Service of Teddy Mihalios, sworn to Feb. 23, 2022, Dkt. Nos. 12, 15; Affidavits of Service of Robert Guyette, sworn to Apr. 26, 2022, Dkt. Nos. 22, 22-1.)  Defendants have failed to answer or otherwise move with respect to the complaint.

Plaintiff moved for entry of default pursuant to Federal Rule of Civil Procedure 55(a) as to the individual defendants on April 14, 2022.  (See Request for Certificate of Default, filed Apr. 14, 2022, Dkt. No. 18.)  On April 20, 2022, the Clerk of the Court noted the defaults of the individual defendants.  (See Clerk's Entry of Default, dated Apr. 20, 2022, Dkt. No. 20.)  Plaintiff moved for entry of default as to the corporate defendants on June 15, 2022.  (See Requests for Certificate of Default, filed June 15, 2022, Dkt. Nos. 24, 25.)  On June 23, 2022, the Clerk of the Court noted the defaults of the corporate defendants.  (See Clerk's Entry of Default, dated June 23, 2022, Dkt. No. 27.)  On June 23, 2022, plaintiff moved for default judgment.  (See Motion for Default Judgment, dated June 23, 2022, Dkt. No. 28.)  Judge Gonzalez referred plaintiff's motion to me on August 30, 2022.  (See Order Referring Motion, dated Aug. 30, 2022.)

Plaintiff seeks a default judgment on claims under the FLSA and NYLL for defendants' failure to (1) pay him minimum wages and overtime compensation, (2) pay him spread of hours wages, and (3) provide proper wage notices and wage statements.  (Compl. ¶¶ 2,

54, 85-94; see also Declaration of Clifford Tucker, Esq. in Support of Plaintiff's Motion for

Default Judgment, dated June 23, 2022 ("Tucker Decl."), Dkt. No. 28-1.)  Plaintiff requests an

award of minimum wages, overtime wages, spread of hours wages, liquidated damages,

statutory damages, pre-judgment interest, post-judgment interest, and attorney's fees and costs.[1]

(Tucker Decl. ¶ 101.)

**DISCUSSION**

The Federal Rules of Civil Procedure provide a two-step process for plaintiffs to

obtain a default judgment.  First, "[w]hen a party against whom a judgment for affirmative

relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or

otherwise, the clerk must enter the party's default," as it has done here.  FED. R. CIV. P. 55(a).

Second, after a default has been entered against the defendant and the defendant fails to appear

or move to set aside the default under Rule 55(c), the court may, on a plaintiff's motion, enter a

default judgment.  FED. R. CIV. P. 55(b)(2).  To grant a default judgment, the court must ensure

that the plaintiff took all the required steps in moving for default judgment, including providing

proper notice to defendants of the lawsuit.  Here, as explained above, plaintiff has demonstrated

that he properly served defendants with the summons and complaint.  Plaintiff has also

demonstrated that he served the Motion for Default Judgment and accompanying submissions

on defendants in compliance with Local Rule 55.2(c).  (See Affidavit of Service of Zafer

Alsalvar, dated Aug. 8, 2022, Dkt. No. 29.)

---

[1] Plaintiff originally included a collective action allegation and request for declaratory relief in
the Complaint.  (Compl. ¶¶ 2, 52-57.)  These claims appear to have been dropped, as they were
omitted from the Motion for Default Judgment and the supporting declaration.  (See Motion for
Default Judgment; Tucker Decl.)

3

**A. Liability**

A defendant's "default is deemed to constitute a concession of all well pleaded allegations of liability." Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). Where a plaintiff moves for default judgment, all factual allegations must be accepted as true, however the court must also "determine whether [plaintiff's] allegations establish [defendants'] liability as a matter of law." Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). Plaintiff has sufficiently pleaded factual allegations that give rise to liability for unpaid overtime wages under the FLSA and NYLL (Compl. ¶¶ 75-77, 81-83) and unpaid spread of hours wages under the NYLL. (Id. ¶¶ 85-87.) The extent to which plaintiff can recover damages for these violations initially depends on whether: (1) his claims were timely; (2) he is a covered employee under the FLSA and the NYLL; and (3) defendants were plaintiff's employers under the FLSA and NYLL.

1. Timeliness

For claims to be timely under the FLSA, they must have arisen within the two years prior to filing of the complaint, or—for willful violations—within the three years prior. 29 U.S.C. § 255(a). Here, the complaint, which was filed on February 8, 2022, alleges willful violations of the FLSA. (See Compl. ¶¶ 53, 54, 56, 70, 82, 85.) Therefore, the FLSA's three-year statute of limitations applies. Regardless of willfulness, plaintiff's claims must arise within six years prior to the filing of the complaint to be timely under the NYLL. See N.Y. Lab. L. §§ 198(3), 663(3). Because plaintiff alleges that he was not properly paid wages from March 22, 2021 through November 6, 2021, I find that his claims are timely under both the FLSA and the NYLL. (See Compl. ¶¶ 42-45.)

2.  Employee Coverage

A plaintiff in a wage and hour action must show that he or she was the

defendants' employee, and that defendants were employers under the FLSA and NYLL.  For

purposes of the FLSA, an employee is "any individual employed by an employer," meaning any

individual whom an employer "suffer[s] or permit[s] to work."  29 U.S.C. §§ 203(e)(1), (g).  An

employer is defined as any "individual, partnership, association, corporation, business trust, legal

representative, or any organized group of persons . . . acting directly or indirectly in the interest

of an employer in relation to an employee." [2]  29 U.S.C. § 203(a), (d).  In addition, for

employees to be covered by the FLSA, they must show either that their employer was an

enterprise engaged in interstate commerce or that their work as employees regularly involved

them in interstate commerce.  See id. § 203(s)(1).

Plaintiff has adequately pleaded that he was an employee to whom no statutory

exemption applies, insofar as he alleges that he was hired as a deli counter worker and cook at

Lolo Grocery and Brother Grocery and he worked for defendants from approximately March 22,

2021 until November 6, 2021.  (Compl. ¶¶ 1, 6, 42-45; see also Declaration of Reynaldo De Soto

Soto, dated Apr. 11, 2022 ("De Soto Soto Decl."), Dkt. No. 28-5.)  In addition, plaintiff alleges

that the corporate defendants each had a gross volume of sales greater than $500,000 per year

during the relevant period, and both were engaged in interstate commerce as defined by the

FSLA.  (Compl. ¶¶ 10-12, 37-39.)  While these allegations are conclusory on their face, courts in

this district have held that similarly conclusory allegations of enterprise coverage may be

---

[2] "Courts have interpreted the definition of 'employer' under the [NYLL] coextensively with
the definition used by the FLSA."  Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253,
308 n.21 (S.D.N.Y. 2011); see also Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d
19, 37 (E.D.N.Y. 2015); Oaxaca v. Hudson Side Cafe Inc., No. 13 CV 2698, 2018 WL
4859152, at *8 (E.D.N.Y. Oct. 8, 2018).

accepted on a motion for default judgment where it may be inferred from the type of business

enterprise that it was engaged in interstate commerce.  See, e.g., Newman v. W. Bar & Lounge,

Inc., No. 20 CV 1141, 2021 WL 2401176, at *5 (E.D.N.Y. June 11, 2021) ("[T]he court can

reasonably infer that at least some materials handled by the plaintiff-employee have moved or

engaged in interstate or international commerce, such as the food, beverages, products, materials,

and equipment utilized by the defendants."); Acosta v. DRF Hosp. Mgmt. LLC, No. 18 CV 346,

2019 WL 1590931, at *9 (E.D.N.Y. Mar. 13, 2019) (finding that an allegation that a restaurant

"had employees engaged in commerce or in the production of goods for commerce and had

annual gross revenues of at least $500,000" is sufficient to satisfy the interstate commerce

requirement), report and recommendation adopted, 2019 WL 1585225 (E.D.N.Y. Apr. 12, 2019).

I agree with the courts that have adopted this approach, and therefore find that plaintiff has

established that he is a covered employee under the FLSA and the NYLL.

### 3.  Employer Status of Corporate and Individual Defendants

Plaintiff seeks to hold four defendants liable for his unpaid wages: two

corporations and two individuals.  (Compl. ¶¶ 1, 20-35.)  To establish the corporate defendants'

liability under the FLSA and NYLL, plaintiff must allege that the corporate defendants were

"enterprise[s] engaged in commerce or in the production of goods for commerce" within the

applicable statutory definition.  29 U.S.C. § 203(s)(1).  As discussed above, plaintiff has

sufficiently established that the corporate defendants were engaged in commerce and were his

employers.  (See Compl. ¶¶ 10-12, 37-38.)

To hold the individual defendants liable under the FLSA and NYLL, plaintiff

must allege that the individual defendants were his "employers" within the broad meaning of 29

U.S.C. § 203(d).  See Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 35-37

(E.D.N.Y. 2015).  In determining whether an employment relationship exists, courts consider, *inter alia*, whether the alleged employer: (1) had the power to hire and fire the employee; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records.  Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984); see also Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999).  Here, plaintiff alleges that Baez hired plaintiff, set plaintiff's salary, paid plaintiff, maintained payroll records, and had the power to fire plaintiff.  (Compl. ¶¶ 19-25.)  Plaintiff further alleges that Ortiz, as manager of Lolo Grocery, managed plaintiff, set plaintiff's hours, supervised plaintiff, exercised control over the corporate defendants' operations, and had the power to fire plaintiff.  (Id. ¶¶ 31-34.)  Thus, plaintiff has alleged that both individual defendants exercised sufficient control over plaintiff to find that they were plaintiff's employers.  Accordingly, plaintiff has established the liability of the corporate defendants as well as the individual defendants under the FLSA and NYLL.

### B.  Damages

Once the court determines that the defaulting defendants are liable, "the court must conduct an inquiry to establish damages to a 'reasonable certainty.'"  Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)).  "[T]he quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation."  Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974).  "The burden is on the plaintiff to establish [his] entitlement to recovery."  Bravado Int'l Grp. Merch. Servs. v. Ninna, Inc., 655 F. Supp. 2d 177, 189 (E.D.N.Y. 2009).

Plaintiff requests damages in the total amount of $48,320.90 for unpaid minimum and overtime wages, spread of hours pay, statutory damages, liquidated damages, and pre- and post-judgment interest.  (Tucker Decl. ¶ 102; see also Damages Calculations, attached as Ex. E to Tucker Decl., Dkt. No. 28-6.)  I will address each in turn.

1.   Unpaid Wages

Where "no records have been produced as a consequence of a defendant's default, courts have held that the 'plaintiff['s] recollection and estimates of hours worked are presumed to be correct.'"  Gunawan, 897 F. Supp. 2d at 88 (quoting Zeng Liu v. Jen Chu Fashion Corp., No. 00 CV 4221, 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004)); see also Kim v. Kum Gang, Inc., No. 12 CV 6344, 2015 WL 2222438, at *25 (S.D.N.Y. Mar. 19, 2015) (finding plaintiffs "need only prove that they performed work for which they were not properly compensated and produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference" where employer has not produced records) (internal quotation marks and citations omitted).  Here, because defendants have defaulted and no employment records have been produced, the court will presume the accuracy of plaintiff's recollection and estimates of hours worked.

Plaintiff asserts that from approximately March 22, 2021, until about September 30, 2021, he worked from approximately 6:30 a.m. until about 9:00 p.m. on Thursdays and Sundays; for the remaining five days of the week, he worked from approximately 6:30 a.m. to about 3:00 p.m.  (De Soto Soto Decl. ¶ 24.)  Accordingly, plaintiff alleges that he worked approximately 71.5 hours per week during the period of March 22, 2021 to September 30, 2021. (Id.)  Plaintiff further asserts that from approximately October 1, 2021 through approximately November 6, 2021, he worked from approximately 6:30 a.m. until about 9:00 p.m., seven days

per week.  (Id. ¶ 25.)  Thus, plaintiff alleges that he worked 101.5 hours per week from

approximately October 1, 2021 to November 6, 2021.  (Id.)  Plaintiff asserts that he was paid

$1,000 per week during the period of March 22, 2021 to September 30, 202l, and was paid

$1,500 per week for the period of October 1, 2021 through November 6, 2021.  (Id. ¶¶ 26-27;

see also Tucker Decl. ¶¶ 41-42; Compl. ¶¶ 46-47.)

a.   *Minimum Wages*

Under both the FLSA and the NYLL, employees must be paid at least the

minimum hourly wage for each hour that they work.  29 U.S.C. § 206; N.Y. LAB. L. § 652.  In

cases where an employee brings claims under state and federal law, the employee is entitled to

the higher minimum wage.  See Mendez v. MCSS Rest. Corp., 564 F. Supp. 3d 195, 208

(E.D.N.Y. 2021).  At all relevant times, the FLSA required defendants to pay plaintiff a

minimum hourly wage of $7.25 and New York law required defendants to pay plaintiff a

minimum hourly wage of $15.00.[3]  29 U.S.C. § 206(a)(1); N.Y. LAB. L. § 652(a)(i).  Because

New York's minimum wage is higher than that of the FLSA, plaintiff may recover that amount

under the NYLL.  29 U.S.C. § 218(a); see also Gunawan, 897 F. Supp. 2d at 89.

To determine whether defendants paid plaintiff at least minimum wage, it is first

necessary to determine his "regular hourly rate of pay."  Under the New York Hospitality

Industry Wage Order, an "employee's regular hourly rate of pay shall be calculated by dividing

the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number of hours

worked by that employee during the work week."  N.Y. COMP. CODES R. & REGS.

---

[3] This is the minimum wage for "large employers," which New York law defines as "[e]very
employer of eleven or more employees." N.Y. LAB. L. § 652(1)(a)(i).  Plaintiff alleges the
corporate defendants had at least eleven employees. (Tucker Decl. ¶ 36; De Soto Soto Decl. ¶
20; see also Compl. ¶ 53.)

("N.Y.C.R.R.") tit. 12 § 146-3.5(b); <u>see also</u> <u>Long Lin v. New Fresca Tortilla, Inc.</u>, No. 18 CV

3246, 2019 WL 3716199, at *3 (E.D.N.Y. May 1, 2019), <u>report and recommendation adopted</u>,

2019 WL 3714600 (E.D.N.Y. May 28, 2019).

| Regular Hourly Rate of Pay Calculation | | | | |
|---|---|---|---|---|
| Time Period | Total Weekly Earnings | Actual Hours Worked per Week | Regular Hourly Rate of Pay (Total Weekly Earnings / 40 hours) | Required Minimum Wage |
| 3/22/2021 – 9/30/2021 | $1,000 | 71.5 | $25 | $15.00 |
| 10/1/2021 – 11/6/2021 | $1,500 | 101.5 | $37.50 | $15.00 |

As reflected in the above chart, plaintiff worked more than forty hours per week.

(<u>See also</u> De Soto Soto Decl. ¶¶ 24-25.)  Therefore, his regular hourly rate of pay is calculated

using forty hours.  Based on plaintiff's submissions and my own calculations, I find that

defendants paid plaintiff a regular hourly rate of pay that was greater than the wage required by

New York law.  Therefore, I respectfully recommend that plaintiff not be awarded any damages

for unpaid minimum wages.

      b.  *Overtime Compensation*

Plaintiff alleges that defendants willfully violated the FLSA and NYLL by

failing to pay him overtime wages.  (Compl. ¶¶ 75-77; 80-82.)  Plaintiff is entitled to overtime

compensation under the FLSA and NYLL at the rate of one and one-half times his regular rate

of pay for the hours he worked in excess of forty during a workweek.  <u>See</u> 29 U.S.C.

§ 207(a)(1); N.Y.C.R.R. tit. 12, § 142-2.2.  "'[T]he regular rate refers to the hourly rate actually

paid [to] the employee for the normal, non-overtime workweek for which he is employed.'"

<u>Hernandez v. NJK Contractors, Inc.</u>, No. 09 CV 4812, 2015 WL 1966355, at *41 (E.D.N.Y.

May 1, 2015) (quoting <u>Walling v. Youngerman Reynolds Hardwood Co.</u>, 325 U.S. 419, 424

(1945)).  The method for calculating overtime is the same under both statutes, but a plaintiff

may not receive double damages.  See Martinez v. Alimentos Saludables Corp., No. 16 CV

1997, 2017 WL 5033650, at *15 (E.D.N.Y. Sept. 22, 2017).

Plaintiff alleges that he consistently worked 71.5 to 101.5 hours per week and that

defendants never paid him overtime compensation.  (See Compl. ¶¶ 44-47, 75, 81.)  To

calculate the overtime compensation he is owed, the number of hours he worked over forty each

week is multiplied by 150 percent of the higher of (i) his regular rate of pay, or (ii) the

applicable minimum wage.  See Long Lin v. New Fresca Tortilla, Inc., 2019 WL 3716199, at

*3.  To obtain the total overtime compensation owed for each time period, the weekly amount is

multiplied by the number of weeks in that time period.  Based on the Regular Hourly Rate of

Pay Calculation above and the calculations in the below table, I respectfully recommend that

plaintiff be awarded $49,781.28 in unpaid overtime wages.

| Overtime Calculations | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Time Period | Hours Worked | Hours Over | 150% of Regular Rate | Minimum Wage | Regular Rate | Weekly Overtime Due | Number of Weeks | Period Overtime Due |
| 3/22/2021 – 9/30/2021 | 71.5 | 31.5 | $37.50 | $15.00 | $25 | $1,181.25 | 27.5 | $32,484.38 |
| 10/1/2021 – 11/6/2021 | 101.5 | 61.5 | $56.25 | $15.00 | $37.50 | $3,459.38 | 5 | $17,296.90 |
| | | | | | | | **TOTAL**: $49,781.28 | |

2.  Spread of Hours

Plaintiff also seeks spread of hours pay under the NYLL.  (Compl. ¶¶ 85-87.)

"The spread of hours is the length of the interval between the beginning and end of an

employee's workday."  N.Y.C.R.R. tit. 12, § 146-1.6(a).  "On each day on which the spread of

hours exceeds 10, an employee shall receive one additional hour of pay at the basic minimum

hourly rate." <u>Id.</u>  Thus, for each day plaintiff worked a shift of more than ten hours, plaintiff is

entitled to an additional hour of pay at the minimum wage rate.  According to plaintiff, he

worked shifts of more than ten hours two days a week from March 22, 2021 to September 30,

2021, and then seven days a week from December 1, 2021 to November 6, 2021.  (<u>See</u> De Soto

Soto Decl. ¶¶ 24-25.)  Based on the calculations in the below table and plaintiff's supporting

documentation, I respectfully recommend plaintiff be awarded a total of $487.50 in spread of

hours wages.

| Spread of Hours Calculations | | | | |
|---|---|---|---|---|
| Time Period | Days per Week That Exceeded 10 Hours | Min. Wage Rate | Number of Weeks Owed SOH Pay | Amount Due for Period |
| 3/22/2021 – 9/30/2021 | 2 | $15.00 | 27.5 | $412.50 |
| 10/1/2021 – 11/6/2021 | 7 | $15.00 | 5 | $75 |
| | | | | **TOTAL**: $487.50 |

3.   <u>Liquidated Damages</u>

Plaintiff additionally requests liquidated damages for his unpaid overtime wages

and spread of hours.  (<u>See</u> Tucker Decl. ¶¶ 84-85; Damages Calculations); <u>see also</u> <u>Rana v.</u>

<u>Islam</u>, 887 F.3d 118, 119 (2d Cir. 2018) (noting that plaintiffs cannot recover cumulative

liquidated damages under both the FLSA and NYLL for the same period).  Plaintiff may

recover liquidated damages in the amount of 100 percent of overtime wages "unless the

employer proves a good faith basis to believe that its underpayment of wages was in compliance

with the law."  N.Y. LAB. L. §§ 198(1-a), 663; <u>see also</u> <u>Garcia v. Giorgio's Brick Oven & Wine</u>

<u>Bar</u>, No. 11 CV 4689, 2012 WL 3339220, at *4 (S.D.N.Y. Aug. 15, 2012), <u>report and</u>

<u>recommendation adopted</u>, 2012 WL 3893537 (S.D.N.Y. Sept. 7, 2012).  The NYLL also

authorizes liquidated damages for spread of hours claims.  See, e.g., Hengjin Sun v. China

1221, Inc., No. 12 CV 7135, 2016 WL 1587242, at *4 (S.D.N.Y. Apr. 19, 2016).

Here, defendants have not answered or otherwise appeared in this action, and thus

cannot demonstrate a "good faith" basis for believing the underpayment of wages was lawful.  I

accordingly recommend that plaintiff be awarded $50,268.78 in liquidated damages, which is

the amount equal to his unpaid overtime compensation and spread of hours pay.

4.   Wage Notices & Statements

Additionally, plaintiff seeks $10,000 total in statutory damages for defendants'

failure to provide wage notices or wage statements as required by NYLL §§ 195(1) and 195(3).

(Tucker Decl. ¶ 78.)  New York's Wage Theft Prevention Act requires employers to give their

employees written notice containing the "employee's rate of pay, allowances, and various other

information relating to the computation of plaintiff's pay" at the time of hiring.  Deng v.

Frequency Elecs., Inc., No. 21 CV 6081, 2022 WL 16923999, at *8 (E.D.N.Y. Nov. 14, 2022).

Section 195(3) requires employers "to provide, for each pay period, a statement ("wage

statement") showing how that pay was computed including deductions."  Id. Plaintiff asserts

that he never received a wage notice or wage statements from defendants.  (Tucker Decl. ¶ 78;

De Soto Soto Decl. ¶¶ 29, 30; Compl. ¶¶ 90, 94.)

The Supreme Court recently held that a technical violation triggering a statutory

damage award only confers Article III standing if the plaintiff demonstrates an actual and

concrete injury resulting from that violation.  See TransUnion LLC v. Ramirez, 141 S. Ct. 2190

(2021).  Consequently, courts in this Circuit have "found allegations of technical violations of

New York Labor Law's wage notice and statement requirements to be insufficient, on their

own, to confer Article III standing."  Beh v. Cmty. Care Companions Inc., No. 19 CV 1417,

2022 WL 5039391, at *7 (W.D.N.Y. Sept. 29, 2022); see also Deng, 2022 WL 16923999, at *9

(finding that plaintiff lacked standing because the "complaint contains no allegations that she

was somehow injured merely because of the failure to provide the required notice and

statements."); You Qing Wang v. XBB, Inc., 18 CV 7341, 2022 WL 912592, at *13 (E.D.N.Y.

Mar. 29, 2022) ("Plaintiff has not linked any injury-in-fact to Defendants' failure to provide

statutory notices under the NYLL, so she lacks standing to recover on that claim."); Francisco v.

NY Tex Care, No. 19 CV 1649, 2022 WL 900603, at *7 (E.D.N.Y. Mar. 28, 2022) (". . .based

on the record before the Court, it is not clear that [failure to provide wage notices and

statements] led to an 'injury' that can be recognized by a federal court.").

     Plaintiff has not alleged that he suffered any harm or injury due to defendants'

failure to provide a wage notice or wage statements.  (See Compl.; Tucker Decl.; De Soto Soto

Decl.)  As such, I find that plaintiff has failed to establish standing for the wage notice and

statements claims and thus is not entitled to statutory damages.

    5.  Pre-judgment Interest

     Plaintiff requests pre-judgment interest. (Compl. ¶ 2; Tucker Decl. ¶¶ 89.)  The

calculation of pre-judgment interest is based on unpaid wages, but not on liquidated or statutory

damages.  Diaz v. Rene French Cleaners, Inc., No. 20 CV 3848, 2022 WL 4646866, at *11

(E.D.N.Y. Aug. 29, 2022).  The rate of interest is calculated at nine percent per annum, and,

where damages were incurred at various times, may be calculated from a single reasonable

intermediate date.  N.Y. C.P.L.R. §§ 5004, 5001(b).  The midpoint of a plaintiff's employment

is a reasonable intermediate date for purposes of calculating pre-judgment interest.  See Fermin,

93 F. Supp. 3d at 49; Diaz, 2022 WL 4646866, at *11.  I have determined that the midpoint of

plaintiff's employment was July 14, 2021.  (See Tucker Decl. ¶¶ 70, 75; Compl. ¶ 6.)

Accordingly, I respectfully recommend that pre-judgment interest be awarded on plaintiff's total unpaid wages of $50,268.78 from July 14, 2021 to the date of this court's judgment at a per diem interest rate of $12.40 ($50,268.78 x 0.09/365).

6.   Post-judgment Interest

Finally, plaintiff requests that any amount that remains unpaid upon ninety days following the issuance of judgment or ninety days after the expiration of time to appeal, whichever is later, automatically increase by fifteen percent per NYLL § 198(4).  (Tucker Decl. ¶ 97.)  However, courts in this district have decided that "federal law control[s] how a federal judgment should be treated once it [is] entered" and that Section 198(4) does not apply to federal judgments.  Chen v. Asian Terrace Rest., Inc., No. 19 CV 7313, 2022 WL 1460272, at *1, 2 (E.D.N.Y. May 9, 2022) ("§ 198(4) is inapplicable to federal judgments) (citing Quesada v. Hong Kong Kitchen, Inc., No. 20 CV5639, 2021 WL 861800, at *2 (E.D.N.Y. Mar. 8, 2021)); see also FCS Advisors, Inc. v. Fair Finance Company, Inc., 605 F.3d 144 (2d Cir. 2010) (per curiam) (finding New York calculation on post-judgment interest invalid in a contract case despite the contract's New York choice of law provision).  Furthermore, the "Second Circuit has noted that even when a tribunal determines to increase judgment payment incentives by increasing the post-judgment interest rate, § 1961 overrides that determination."  Chen, 2022 WL 1460272, at *3.  Section 1961 provides that interest is calculated "from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment."  28 U.S.C. § 1961(a).  Moreover, post-judgment interest under Section 1961 is mandatory.  See Fermin, 93 F. Supp 3d at 53.  Therefore, I respectfully recommend that plaintiff be awarded post-judgment interest under 28 U.S.C. § 1961.

### C.  Attorney's Fees and Costs

As the prevailing party, plaintiff is entitled to recover reasonable attorney's fees and costs under both the FLSA and the NYLL.  See 29 U.S.C. § 216(b), N.Y. LAB. L. §§ 198, 663(1).  Plaintiff seeks an award of $7,064 in attorney's fees and $1,118.28 in costs.  (Tucker Decl. ¶ 92; see Attorney's Fees and Costs, attached as Ex. F to Tucker Decl., Dkt. No. 28-7.)  Courts in this Circuit exercise their discretion to determine the reasonableness of attorney's fees using the "presumptively reasonable fee" standard.  Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 183, 190 (2d Cir. 2008).  The presumptively reasonable fee, also known as the lodestar, is "the product of a reasonable hourly rate and the reasonable number of hours required by the case."  Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011).

As a threshold matter, the party seeking fees must provide accurate, detailed and contemporaneous attorney time records.  See Scott v. City of New York, 643 F.3d 56, 58-59 (2d Cir. 2011) (per curiam); N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983); In re Phelan, 570 N.Y.S.2d 202, 203 (2d Dep't 1991).  Plaintiff has satisfied this requirement.  (See Attorney's Fees and Costs.)  The court next assesses whether plaintiff's counsel requests a reasonable hourly rate.  Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994).  A reasonable hourly rate is "the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."  Arbor Hill, 522 F.3d at 190.  Reasonable hourly rates should be based on "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation."  Cruz v. Local Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (citation omitted).  A judge may determine prevailing rates based on

16

evidence presented, knowledge of rates charged in the community, and "the nature of

representation and type of work involved in a case." Arbor Hill, 522 F.3d at 184 n.2; see

Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1059 (2d Cir. 1989).

Plaintiff's counsel requests hourly rates of $350 for Clifford Tucker, and $200 for

the paralegal.  (See Tucker Decl. ¶ 96; Attorney's Fees and Costs.)  Mr. Tucker is an associate

at Sacco & Fillas LLP with experience in wage and hour litigation since 2013.  (See Tucker

Decl. ¶ 96.)  $350 per hour is a reasonable rate for Mr. Tucker.  See Flores v. Urciuoli, No. 19

CV 6380, 2022 WL 987353, at *7 (E.D.N.Y. Jan. 10, 2022) (holding that $375 per hour was

reasonable for a solo practitioner focusing on FLSA and employment cases who was admitted

to practice in 2013); Calle v. NDG Coffee Shop, Inc., No. 16 CV 7702, 2018 WL 1779347

(S.D.N.Y. Apr. 12, 2018) (finding an hourly rate of $375 reasonable for an attorney with five

years of experience in wage and hour litigation).

However, plaintiff's counsel requests an hourly rate that is higher than the rates

ordinarily awarded to paralegals and other support staff in FLSA cases.  See Martinez, 2020

WL 5260579, at *9.  The rate requested is therefore excessive under the circumstances of this

case.  See Cortes v. New Creators, Inc., No. 15 CV 5680, 2016 WL 3455383, at *7 (S.D.N.Y.

June 20, 2016) (reducing hourly rate for paralegal from $200 to $125).  The work required for

this case was particularly straightforward because it was resolved on a motion for default

judgment.  See Sevilla v. House of Salads One LLC, No. 20 CV 6072, 2022 WL 954740, at *12

(E.D.N.Y. Mar. 30, 2022).  Accordingly, I find that a reasonable rate for the paralegal in this

case is $125 per hour.

The court next looks to the reasonableness of the number of hours billed.  To

determine the reasonableness of the hours spent on the litigation, the court must make "a

17

conscientious and detailed inquiry into the validity of the representations that a certain number

of hours were usefully and reasonably expended." Maldonado v. La Nueva Rampa, Inc., No. 10

CV 8195, 2012 WL 1669341, at *13 (S.D.N.Y. May 14, 2012) (quoting Lunday v. City of

Albany, 42 F.3d 131, 134 (2d Cir. 1994)).  The "critical inquiry is 'whether, at the time the

work was performed, a reasonable attorney would have engaged in similar time expenditures.'"

Id. (quoting Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992)).

   Here, plaintiff's counsel seeks compensation for 24.94 hours of work.  (See

Attorney's Fees and Costs.)  Of the total, Mr. Tucker worked 13.84 hours, and the paralegal

worked 11.1 hours.  (Id.)  Having reviewed the submitted time records, I find the claimed

number of hours reasonable.  See, e.g., Zhang v. Asian Moon Rest. Corp., 20 CV 2776, 2022

WL 1422576, at *9 (E.D.N.Y. Mar. 15, 2022) (finding 44.8 hours to be within the reasonable

range for a single-plaintiff FLSA default case), report and recommendation adopted, 2022 WL

1460275 (E.D.N.Y. May 9, 2022); Ahn v. Sun Cleaners Inc., 19 CV 5919, 2022 WL 586022, at

*12 (E.D.N.Y. Feb. 18, 2022) (finding thirty-five hours to be a reasonable number billed in a

single-plaintiff FLSA default case); Du v. CGS Metal Fabrication Inc., 19 CV 1821, 2022 WL

987316, at *13 (E.D.N.Y. Jan. 14, 2022) (finding 31.1 hours reasonable in a single-plaintiff

FLSA default case).  Accordingly, I respectfully recommend that plaintiff be awarded

$6,231.50 in attorney's fees, consisting of $4,844.00 for Mr. Tucker ($350 × 13.84 hours), and

$1,387.50 for the paralegal ($125 × 11.1 hours).

   Plaintiff additionally requests compensation for $1,118.28 in costs, representing

$402 for this court's filing fee, $676 in service of process fees, and $40.28 for the use of an

online legal research database.  (See Attorney's Fees and Costs.)  "Ordinarily, plaintiffs may

recover costs relating to filing fees, process servers, postage, and photocopying." Pichardo v. El

Mismo Rincon Latino Corp., No. 17 CV 7439, 2018 WL 4101844, at *11 (E.D.N.Y. Aug. 7,

2018) (quotations and citation omitted), report and recommendation adopted, 2018 WL

4100480 (E.D.N.Y. Aug. 28, 2018); see also LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763

(2d Cir. 1998).  Plaintiff has submitted sufficient documentation for filing fees and service of

process costs.  (See Attorney's Fees and Costs.)  However, "[w]ith regard to Plaintiff's request

for reimbursement of online legal research . . . these costs are generally considered overhead

and are not reimbursable."  Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v.

D & A Bus Co., Inc., 270 F. Supp. 3d 593, 630 (E.D.N.Y. 2017).  Accordingly, I find $1,078 to

be reasonable out-of-pocket expenses.

<strong>CONCLUSION</strong>

For the reasons set forth above, I respectfully recommend that plaintiff's motion

be granted and that default judgments be entered against all defendants, jointly and severally.

Regarding damages, I respectfully recommend that plaintiff be awarded a total of $100,537.56

as follows: $49,781.28 in unpaid wages, $487.50 in spread of hours damages, and $50,268.78 in

liquidated damages.  I further recommend that pre-judgment interest be awarded on plaintiff's

unpaid wages of $49,781.28 from July 14, 2021 to the date of this court's judgment at a per

diem interest rate of $12.40.  I also recommend that post-judgment interest be awarded at the

rate set forth in 28 U.S.C. § 1961(a).  Finally, I recommend that plaintiff receive $6,231.50 in

attorney's fees and $1,078 in costs.

Plaintiff is directed to serve copies of this Report and Recommendation on

defendants by regular mail, and to file proof of service with the court within ten days of this

Report and Recommendation.  Any objections to this Report and Recommendation must be

filed electronically, with courtesy copies to Judge Gonzalez and to my chambers, within

19

fourteen days.  Failure to file objections within the specified time waives the right to appeal the

district court's order.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(d).


                                                Respectfully submitted,


                                                _____/s/_____
                                                ROBERT M. LEVY
                                                United States Magistrate Judge


Dated: Brooklyn, New York
       December 14, 2022

20