UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

REYNALDO DE SOTO SOTO,

                Plaintiff,

      v.

JULIO H. BAEZ LOLO GROCERY CORP.,
B BROTHER GROCERY CORP.,
RICHARD O BAEZ, and PASQUALE
ORTIZ,

                Defendants.

**MEMORANDUM & ORDER**
22-CV-00700 (HG) (RML)

**HECTOR GONZALEZ**, United States District Judge:

      This order addresses Plaintiff's motion for a default judgment, *see* ECF No. 28, which the Court referred to Magistrate Judge Robert M. Levy for a report and recommendation (the "R&R"), *see* ECF No. 30, and Defendants' objections to the R&R, along with Defendants' request that the Court vacate the entry of default, *see* ECF No. 34. For the reasons set forth below, the Court denies Defendants' request to vacate the entry of default, adopts the R&R in part, as modified in the manner set forth below with respect to the amount of Plaintiff's damages, and grants in part Plaintiff's motion for a default judgment. However, the Court denies Plaintiff's motion for a default judgment with respect to Defendant Pasquale Ortiz, an alleged manager at one of Defendants' stores, and dismisses Plaintiff's claims against him. To the extent Plaintiff still wishes to pursue his claims against Defendant Ortiz, Plaintiff shall file an amended complaint no later than April 14, 2023, or else the Court will dismiss Plaintiff's claims against Defendant Ortiz with prejudice.

**FACTUAL BACKGROUND**

Plaintiff is asserting claims for unpaid minimum wages, overtime wages, and spread-of-hours pay in violation of the federal Fair Labor Standards Act (the "FLSA") and the New York Labor Law (the "NYLL").  ECF No. 1 ¶¶ 58–87.  Plaintiff is also seeking statutory damages for Defendants' alleged failure to provide a wage notice and wage statements required by the NYLL.  *Id.* ¶¶ 88–95.

Plaintiff alleges that he worked at the deli counter and as a cook for Defendant B Brother Grocery Corp. between March 22, 2021, and April 22, 2021, and that he performed the same work for Defendant Julio H. Baez Lolo Grocery Corp. between April 22, 2021, and October 30, 2021.  ECF No. 1 ¶¶ 42–43; ECF No. 28-5 ¶¶ 1, 22–23.[1]  Plaintiff alleges that Defendant Richard O. Baez owns both of these stores and that Defendant Pasquale Ortiz was a manager at Julio H. Baez Lolo Grocery Corp.  ECF No. 1 ¶¶ 13–27.  Neither Plaintiff's complaint nor his declaration in support of his motion for a default judgment asserts that Ortiz worked at B Brother Grocery Corp.  *See* ECF Nos. 1 & 28-5.  Defendant Baez has filed a declaration in opposition to Plaintiff's default judgment motion, which acknowledges that he owns both stores.  ECF No. 34-16 ¶¶ 2–3.

Plaintiff states that during the period between April 22, 2021, and September 30, 2021, he worked approximately 71.5 hours each week and was paid only $1,000 each week.  ECF No. 28-5 ¶¶ 24, 26.  During the period between October 1, 2021, and October 30, 2021, Plaintiff states that he worked approximately 101.5 hours each week and was paid only $1,500 each week.  *Id.*

---

[1] Plaintiff's complaint alleges that he worked at Julio H. Baez Lolo Grocery Corp. up until November 6, 2021, *see* ECF No. 1 ¶ 43, whereas his declaration in support of his default judgment motion states that he worked there only up until October 30, 2021, *see* ECF No. 28-5 ¶ 23.  The Court will calculate Plaintiff's damages using the October 30 end date because Plaintiff personally signed his declaration but not his complaint.

2

¶¶ 25, 27.  Plaintiff states that he was never paid any spread-of-hours pay required by the NYLL.  *Id.* ¶ 28.  Plaintiff also states that he never received a wage notice at the time he was hired and did not receive wage statements each time that he was paid, both of which are required by the NYLL.  *Id.* ¶¶ 29–30.  Neither Plaintiff's declaration nor his complaint, however, explain any particular harm that allegedly flowed from Defendants' failure to provide a wage notice or wage statements.  *See* ECF Nos. 1 & 28-5.

No attorney entered a notice of appearance for Defendants until 12 days after Plaintiff sent Defendants a copy of the R&R, which recommended that a default judgment of over $100,000 be entered against them.  ECF Nos. 30–32.  At that point, Defendants requested an extension of time to submit objections to the R&R, which the Court granted.  ECF No. 33.  Defendants submitted objections within that extended time period, and the document containing their objections also argued that the Court should vacate the entry of default against them.  ECF No. 34.

## **LEGAL STANDARD**

The Court must review *de novo* the portions of the R&R to which any party has objected.  Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C).  For any portions of the report "to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record in order to accept it."  *Logan v. World Luxury Cars, Inc.*, No. 15-cv-248, 2023 WL 156878, at *1 (E.D.N.Y. Jan. 11, 2023).[2]

---

[2]   Unless noted, case law quotations in this order accept all alterations and omit internal quotation marks, citations, and footnotes.

3

## DISCUSSION

### I. The Court Declines to Vacate Defendants' Defaults

#### A. Legal Standard for Vacating Entry of Default

The Court "may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). Because Rule 55(c) does not define the term "good cause," the Second Circuit has established criteria for district courts to consider. *See Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 186 (2d Cir. 2015). Accordingly, "[i]n deciding a motion to vacate an entry of default, the district court is to be guided principally by three factors: '(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented.'" *Baxter v. Bradley*, No. 21-1787-pr, 2022 WL 1315629, at *1 (2d Cir. May 3, 2022) (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)).

A defendant's default does not rise to the level of being "willful" if it was "merely negligent or careless." *Bricklayers*, 779 F.3d at 186. Instead, the defendant's conduct leading to the default must be "egregious and not satisfactorily explained." *Id.*

To establish prejudice, "a plaintiff must show the loss of evidence, increased difficulties of discovery, or greater opportunity and collusion—circumstances that make it more difficult for plaintiff to prosecute its case to establish that vacatur would prejudice its interests." *Windward Bora LLC v. Armstrong*, No. 18-cv-6355, 2021 WL 606713, at *4 (E.D.N.Y. Feb. 16, 2021). The mere delay associated with the expiration of a defendant's original deadline to answer and a subsequent motion to vacate that default is not sufficient. *See Tverdy v. Metro Auto Body Inc.*, No. 20-cv-3153, 2020 WL 7343304, at *2 (E.D.N.Y. Dec. 14, 2020).

In order to show a meritorious defense, "'the defendant need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial, would constitute a

4

complete defense.'" *Am. Empire Surplus Lines Ins. Co. v. Concord Restoration Inc.*, No. 20-cv-2341, 2022 WL 950432, at *4 (E.D.N.Y. Mar. 30, 2022) (quoting *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 167 (2d Cir. 2004)). "[A] defendant must do more than merely allege that a defense exists," but "courts in this Circuit routinely recognize that a defendant need only meet a low threshold to satisfy this factor." *Li v. Fleet N.Y. Metro. Reg'l Ctr. LLC*, No. 21-cv-5185, 2022 WL 1666963, at *7 (E.D.N.Y. May 25, 2022).

Courts should weigh these factors while "keeping in mind" the Second Circuit's "'strong preference for resolving disputes on the merits.'" *Baxter*, 2022 WL 1315629, at *1 (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)). Accordingly, "'the extreme sanction of a default judgment must remain a weapon of last, rather than first, resort.'" *Gov't Emps. Ins. Co. v. Jacobson*, No. 15-cv-7236, 2019 WL 10959842, at *2 (E.D.N.Y. Oct. 15, 2019), *report and recommendation adopted in full*, No. 15-cv-7236 (E.D.N.Y. Nov. 6, 2019) (quoting *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981)). "'[A]ll doubts must be resolved in favor of the party seeking relief from the [default] in order to ensure that to the extent possible, disputes are resolved on their merits.'" *Tverdy*, 2020 WL 7343304, at *1 (quoting *Green*, 420 F.3d at 104).

### B. Defendants' Conduct Does Not Satisfy the Applicable Standard

The procedural history of this case suggests that Defendants' default was willful, and Defendants have failed to demonstrate otherwise. Defendants were each served with Plaintiff's complaint and a summons in February 2022. ECF Nos. 12–15. Defendants neither dispute the validity of that service nor argue that they failed to receive actual notice that Plaintiff had commenced a lawsuit against them. *See* ECF No. 34. After the Clerk of Court entered a default against each Defendant, Plaintiff served copies of his default judgment papers, which included those certificates of default, by mailing the papers to Defendants' business addresses in August 2022. ECF No. 29. Defendants do not dispute having received copies of those papers. *See* ECF

5

No. 34. After the R&R was issued on December 14, 2022, Plaintiff sent it to Defendants' same addresses the next day, *see* ECF No. 31, and Defendants do not dispute that they received it, *see* ECF No. 34. No attorney appeared on behalf of Defendants until December 27, 2022, shortly before Defendants' 14-day period to object to the R&R was about to expire. ECF Nos. 32–33. In total, Defendants waited more than nine months between the date they were originally required to appear and when they eventually chose to appear.

This pattern of behavior suggests that Defendants were, in fact, receiving notice of the developments in Plaintiff's lawsuit—and perhaps actively monitoring it to see how large their exposure would be before deciding whether to defend against Plaintiff's claims. Defendants chose to appear only once they received a document suggesting that a judgment of more than $100,000 would imminently be entered against them. *See* ECF No. 30. In light of this history, the Court is not persuaded by the unsworn statement by Defendants' attorney that Defendant Baez had an unspecified medical condition that prevented Defendants from "focus[ing] on resolving this matter until now." ECF No. 34 at 4. Notably, Defendant Baez's declaration makes no mention of this illness, *see* ECF No. 34-16, and not even Defendants' attorney suggests that Baez's illness was so severe that it prevented him from operating any aspect of his business unrelated to this lawsuit, *see* ECF No. 34 at 4.

Vacating Defendants' default would likely prejudice Plaintiff through further unreasonable delays because Defendants' counsel has recently sought permission to withdraw on the basis that Defendants have "ceased all communications with [his] firm" since he submitted Defendants' objections to the R&R. ECF No. 36. Defendants' apparent refusal to communicate with their counsel suggests that they do not intend to participate in this case or to provide Plaintiff with the discovery necessary to prove his claims.

6

Defendants have also failed to demonstrate a meritorious defense. The only evidence that Defendants have put forth that relates to their liability for Plaintiff's claims are tax returns for each of the corporate defendants, which show that each corporation individually had less than $500,000 in "[g]ross receipts or sales" in 2021. *See* ECF No. 34-2. Although Defendants do not expressly argue such, *see* ECF No. 34, the Court assumes that Defendants submitted this evidence for the purpose of attempting to show that the corporate defendants do not fall within the FLSA's so-called "enterprise coverage," which requires that a defendant have an "annual gross volume of sales made or business done" of at least $500,000, *see* 29 U.S.C. § 203(s). All of Defendants' remaining arguments relate to the amount of damages to which Plaintiff is entitled rather than to their liability. *See* ECF No. 34. In fact, Defendant Baez's declaration, made under penalty of perjury, admits that Plaintiff worked at least some overtime hours for which Plaintiff was not properly compensated. ECF No. 34-16 ¶ 13.

The Court finds that Defendants' submission of these tax returns does not demonstrate a potentially meritorious defense because the two corporations' gross receipts collectively total more than $500,000, and Defendants have done nothing to attempt to rebut Plaintiff's allegations that the two corporations served as his joint employer. *See Cao v. Miyama, Inc.*, No. 15-cv-266, 2019 WL 4279407, at *9 (E.D.N.Y. Sept. 10, 2019) (holding after bench trial that two corporate defendants' "gross annual sales may be combined to determine whether they satisfy the $500,000 enterprise-coverage threshold" because the defendants were "a single, integrated enterprise"). In any event, even if Plaintiff's FLSA claims were to fail on these grounds, Defendants would not have defeated all of Plaintiff's claims because the enterprise coverage threshold is not a jurisdictional requirement. *See Angel v. Harvest C-Food Inc.*, No. 14-cv-6035, 2015 WL 7288644, *2 (S.D.N.Y. Nov. 16, 2015) (holding that enterprise coverage threshold was an

7

element of a FLSA claim but not a jurisdictional requirement). The Court could therefore exercise supplemental jurisdiction over Plaintiff's NYLL claims, which contain no such requirement. *Cao*, 2019 WL 4279407, at *9 n.6 (alternatively holding that the court could exercise supplemental jurisdiction over Plaintiff's NYLL claims even if the corporate defendants could not be considered joint employers for FLSA purposes).

## II.   The Court Dismisses Plaintiff's Claims Against Defendant Ortiz

Although the Court declines to vacate the entry of default against Defendants, the Court considers *sua sponte* whether the allegations in Plaintiff's complaint adequately allege a violation of law and finds that they fail to do so with respect to Defendant Ortiz. Plaintiff has failed to allege that Ortiz was Plaintiff's employer for purposes of the FLSA or the NYLL. The Court therefore denies Plaintiff's motion for a default judgment with respect to Ortiz and dismisses Plaintiff's claims against Ortiz without prejudice to Plaintiff filing an amended complaint that attempts to reassert those claims.

The Second Circuit has instructed district courts to consider the following, non-exhaustive factors when deciding whether an individual defendant should be considered a plaintiff's "employer" and, therefore, held liable for FLSA violations committed by a company where that individual defendant worked: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Irizarry v. Catsimatidis*, 722 F.3d 99, 105 (2d Cir. 2013) (affirming grant of summary judgment motion finding that CEO was plaintiffs' employer for FLSA purposes); *Ocampo v. Brown & Appel, LLC*, No. 21-2579-cv, 2022 WL 17684587, at *2 (2d Cir. Dec. 15, 2022) (affirming grant of summary judgment in favor of individual defendant, applying the same factors to plaintiffs' FLSA claims, and assuming without deciding that such factors were also

8

applicable to plaintiffs' NYLL claims).  District courts must weigh these factors according to the "totality of [the] circumstances," and not all four factors need to be satisfied to determine that an individual defendant is a plaintiff's employer.  *Irizarry*, 722 F.3d at 106.

The Court may consider at the default judgment stage whether Plaintiff's allegations are sufficient to demonstrate that Defendant Ortiz was Plaintiff's employer.  *See Juarez v. Precision Apparel, Inc.*, No. 12-cv-2349, 2013 WL 5210142, at *1, *7, *15 (E.D.N.Y. Sept. 13, 2013) (adopting report and recommendation that declined to enter default judgment against some individual defendants and instead dismissed the claims against them).  Plaintiff's complaint alleges that Ortiz "maintains access and/or control over the business license" for Julio H. Baez Lolo Grocery Corp. and "participated in the day-to-day operations" of that store.  ECF No. 1 ¶¶ 29–30.  The only allegations related to Ortiz's direct relationship with Plaintiff state that Ortiz "ordered Plaintiff" and "set" Plaintiff's "hours."  *Id.* ¶¶ 31–32.  On top of these allegations, the complaint alleges the pure legal conclusion that Ortiz "exercised sufficient control over Defendants' operations and Plaintiff['s] . . . employment to be considered [Plaintiff's] employer under the FLSA and NYLL."  *Id.* ¶¶ 25, 34.  Plaintiff's declaration is consistent with these allegations and does not supplement them with any new information.  ECF No. 28-5.

Neither Plaintiff's complaint nor his declaration state that Ortiz played any role in hiring Plaintiff or deciding the rate at which he was paid.  *See* ECF Nos. 1 & 28-5.[3]  Ultimately, Plaintiff's allegations amount to little more than that Ortiz had a "managerial title," and the Court finds these allegations insufficient "to plausibly subject [Ortiz] to liability under the FLSA and

---

[3]     There is no other information in the record that suggests Ortiz may have been involved with these decisions.  To the contrary, Ortiz has submitted a declaration stating that his titles were "cashier" and "manager" and that he was paid only the New York minimum hourly wage for his work.  ECF No. 34-15.

9

the NYLL for the allegedly illegal payroll practices at issue in this case." *Ayala v. Looks Great Servs., Inc.*, No. 14-cv-6035, 2016 WL 3541548, at *7 (E.D.N.Y. June 23, 2016) (dismissing FLSA and NYLL claims against individual Defendant because "the mere recitation that an individual defendant satisfies the elements of the economic reality test, without pleading any factual allegations supporting that claim, is similar to a legal conclusion that does not raise a right to relief above the speculative level"); *see also Ding v. The Mask Pot*, No. 20-cv-6076, 2022 WL 4647847, at *5 (E.D.N.Y. Oct. 1, 2022) (dismissing FLSA and NYLL claims against individual defendant whom plaintiffs did not allege "had the ability to affect their pay"). However, since Plaintiff has never amended his complaint, the Court finds it appropriate to grant Plaintiff one opportunity to amend his claims against Defendant Ortiz. *See Ayala*, 2016 WL 3541548, at *8 (granting plaintiffs leave to amend).

### III. The Court Modifies Plaintiff's Damages Attributable to Unpaid Wages in Response to Defendants' Objections

#### A. Plaintiff's Unpaid Minimum Wages and Overtime

Defendants object to the amount of unpaid minimum wages and overtime that the R&R recommends awarding to Plaintiff, challenging both the number of hours that Plaintiff allegedly worked and the rates of pay used to calculate damages. *See* ECF No. 34 at 7–9. The Court therefore reviews *de novo* these aspects of the R&R.

The Court rejects Defendants' challenge to the number of hours Plaintiff worked. Defendants admit that they did not maintain any employment records that they can use to rebut Plaintiff's assertions related to the hours that he worked, but they nevertheless argue that Plaintiff's hours are "grossly exaggerated." *Id.* at 7. However, even at the default judgment stage, the Second Circuit has approved of district courts relying on a plaintiff's "estimates based on his own recollection" of his hours worked in the absence of employer records. *Hernandez*

10

*Gomez v. 4 Runners, Inc.*, 769 F. App'x 1, 2 (2d Cir. 2019) (affirming default judgment in favor of plaintiff). Under such circumstances, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. Should the employer fail to produce such evidence, the court may award damages, even though the result is only approximate." *Id.* The Court does not find Plaintiff's estimates of the number of hours he worked to be inherently incredible, and Defendants have failed to meet their burden to rebut those estimates.

Defendants also object to the R&R's calculation of Plaintiff's regular rate of pay as $25 per hour during the weeks when Plaintiff was paid $1,000 per week and $37.5 per hour during the weeks when Plaintiff was paid $1,500 per week. ECF No. 34. The R&R calculates these rates using a regulation promulgated by the New York Department of Labor, which states that when a worker in the hospitality industry is paid on a weekly basis, rather than an hourly basis, the employee's "regular rate" of pay for purposes of calculating unpaid minimum wages and overtime compensation "shall be calculated by dividing the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." 12 N.Y.C.C.R.R. § 146-3.5(b).[4]

Upon reviewing *de novo* the R&R's calculation of Plaintiff's hourly rate, the Court finds that Plaintiff has failed to demonstrate that he was compensated on a weekly basis and, therefore,

---

[4] The regulation applies only to employees in the "hospitality industry," which includes "any eating or drinking place that prepares and offers food or beverage for human consumption" through, among other things, "counter service to the public." 12 N.Y.C.C.R.R. §§ 146-3.1(a), (b). Defendants have not challenged that their maintenance of deli counters in their stores, coupled with Plaintiff's work at those deli counters, brings Plaintiff's employment by Defendants within the scope of the hospitality industry, *see* ECF No. 34, and the Court finds that this conclusion in the R&R is not clearly erroneous.

has failed to demonstrate that the New York Department of Labor's regulation applies to his compensation. Neither Plaintiff's complaint nor his declaration alleges that he worked varying amounts each week yet received the same amount of pay. *See* ECF Nos. 1 & 28-5. Instead, Plaintiff's own allegations assert that at the only point in time when the number of hours he worked increased, his total weekly pay also increased. ECF No. 1 ¶¶ 44–47; ECF No. 28-5 ¶¶ 24–27; *see Chowdhury v. Hamza Exp. Food Corp.*, No. 14-cv-150, 2015 WL 5541767, at *4 (E.D.N.Y. Aug. 21, 2015) (holding at default judgment stage that plaintiff was paid at an hourly rate because he "testified that his wages changed from week to week, depending on the number of hours worked"), *report and recommendation adopted in full*, 2015 WL 5559873 (E.D.N.Y. Sept. 18, 2015), *aff'd*, 666 F. App'x 59 (2d Cir. 2016). Notably, at the point in time that Plaintiff alleges that his weekly hours increased by approximately 42%, he alleges that his weekly pay increased by 50%, which suggests that the amount Defendants paid Plaintiff bore some relationship to the amount of hours he actually worked. ECF No. 1 ¶¶ 44–47; ECF No. 28-5 ¶¶ 24–27. In fact, the only allegation, albeit one made in a conclusory manner, that Plaintiff was paid the same amount each week regardless of the number of hours that he worked is supplied by a declaration by Plaintiff's counsel, which contains no explanation as to how Plaintiff's counsel could possibly have personal knowledge of that fact. *See* ECF No. 28-1 ¶ 72.

Accordingly, the Court calculates Plaintiff's regular rate by dividing the amount of money Plaintiff alleges he was paid each week by the amount of hours that Plaintiff alleges he actually worked. During the weeks when Plaintiff allegedly worked 71.5 hours and was paid $1,000, Plaintiff's regular rate was approximately $13.99. During the weeks when Plaintiff allegedly worked 101.5 hours and was paid $1,500, Plaintiff's regular rate was approximately

12

$14.78.  In both instances, those hourly rates fall below the applicable minimum wage, so Plaintiff is entitled to collect damages for both unpaid minimum wages and unpaid overtime.

The Court therefore calculates Plaintiff's unpaid minimum wage and overtime damages as $10,535.74, according to the calculations in Exhibit A at the end of this order.  Taken together with the R&R's calculation of Plaintiff's unpaid spread-of-hours pay of $487.50, to which no party has objected, Plaintiff's total unpaid wages are $11,023.24.

### B. Plaintiff's Liquidated Damages

Defendants have objected to the R&R's recommendation that they be required to pay liquidated damages under the NYLL in an amount equal to the sum of Plaintiff's minimum wage, overtime, and spread-of-hours damages.  The relevant provision of the NYLL makes an employer liable for such an amount of liquidated damages "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law."  N.Y. Lab. L. § 663(1).  Defendants do not even attempt to explain in their objections that they believed their underpayment of Plaintiff's wages—since they concede that they underpaid at least some amount—was lawful.  ECF No. 34 at 9–10.  Instead, Defendants claim that they "had every intention of paying the overtime owed," but that their "resources had to be diverted to address[] [Defendant Baez's] health challenges."  *Id.* at 9.  This amounts to an admission that Defendants purposely "diverted" Plaintiff's wages for Defendant Baez's personal use and does not meet the NYLL's criterion for avoiding liquidated damages.  The Court therefore imposes liquidated damages in an amount of $11,023.24.

### C. Plaintiff's NYLL Wage Statement and Wage Notice Claims

The R&R recommends that the Court decline to award Plaintiff any damages for Defendants' alleged failure to provide him with a wage notice at the time he was hired and wage statements each time he was paid because Plaintiff has not demonstrated that he has Article III

13

standing to assert such claims according to the criteria established by the Supreme Court in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021).  The Court reviews this portion of the R&R for clear error because Plaintiff has not filed any objections and Defendants did not object to this portion of the analysis.

Although the Court is not necessarily prepared to go as far as holding that "it is doubtful that the mere violation of [NYLL] §§ 198(1-b) and 198(1-d) could ever give rise to accompanying injury sufficient for standing purposes," the Court finds that no clear error exists in denying damages for Plaintiff's wage notice and wage statement claims based on the facts Plaintiff has alleged.  *Deng v. Frequency Elecs., Inc.*, No. 21-cv-6081, 2022 WL 16923999, at *9 (E.D.N.Y. Nov. 14, 2022) (cited in the R&R, ECF No. 30 at 13–14).  Plaintiff has not alleged, for example, any "downstream consequences" associated with Defendants' failure to provide a wage notice and wage statements, such as any misunderstanding about the amount of hours he worked during a particular period, that may have caused him the loss of the time value of money in not seeking more promptly to rectify Defendants' underpayment.  *TransUnion*, 141 S. Ct. at 2214 (leaving open the possibility that a plaintiff might have Article III standing to vindicate a statute designed to protect against an "information injury" if the plaintiff could identify "downstream consequences from failing to receive the required information").  The Court is not holding that such allegations would suffice to establish Article III standing in a future case involving violations of the NYLL's wage notice or wage statement requirements and is instead only highlighting that Plaintiff has not even attempted to allege any downstream consequences from his informational injury.

### D. Pre-Judgment Interest, Post-Judgment Interest, and Attorneys' Fees

No party has objected to the manner in which the R&R calculates pre- or post-judgment interest.  The Court therefore adopts these methods and calculates pre-judgment interest on

Plaintiff's $11,023.24 of unpaid wages at New York's statutory 9% rate, *see* CPLR 5001(b), 5002, 5004, from the midpoint date of Plaintiff's employment, July 14, 2021. This amounts to a per-diem rate of $2.72, which is equivalent to ( $11,023.24 * ( 0.09 / 365 ) ), for each day between July 14, 2021, and the date that the Clerk of Court enters judgment. Defendants shall owe Plaintiff post-judgment interest at the rate required by 28 U.S.C. § 1961.

Finally, no party has objected to the R&R's recommendation that Plaintiff's counsel be awarded attorneys' fees and costs or the R&R's calculation of those amounts. The Court therefore adopts the recommendation to award Plaintiff's counsel $6,231.50 in attorneys' fees and $1,118.28 in costs.

## **CONCLUSION**

The Court adopts Judge Levy's thorough R&R only in part, as set forth above. ECF No. 30. The Court GRANTS Plaintiff's motion for a default judgment against Defendants B Brother Grocery Corp., Julio H. Baez Lolo Grocery Corp., and Richard O. Baez. ECF No. 28. These three Defendants are jointly and severally liable to Plaintiff for: (i) $11,023.24 in unpaid minimum wages, overtime, and spread-of-hours pay owed pursuant to the NYLL; (ii) $11,023.24 in liquidated damages owed pursuant to the NYLL; (iii) pre-judgment interest to be calculated by the Clerk of Court at a per-diem rate of $2.72 between July 14, 2021, and the entry of judgment; and (iv) post-judgment interest to be calculated by the Clerk of Court at the rate provided in 28 U.S.C. § 1961. These three Defendants are also jointly and severally liable to Plaintiff's counsel for $6,231.50 in attorneys' fees and $1,118.28 in costs.

The Court DENIES Plaintiff's motion for a default judgment against Defendant Pasquale Ortiz and dismisses Plaintiff's claims against Ortiz. Plaintiff may file an amended complaint asserting claims against Defendant Ortiz on or before April 14, 2023, or else the Court will direct

15

the Clerk of Court to enter judgment after that date dismissing Plaintiff's claims against

Defendant Ortiz with prejudice.

      SO ORDERED.

                                                     */s/ Hector Gonzalez*
                                                    HECTOR GONZALEZ
                                                    United States District Judge

Dated:  Brooklyn, New York
          March 31, 2023

**Exhibit A – Plaintiff's Unpaid Wages**

| Period Start | Period End | Hours / Week | Regular Hours / Week | Overtime Hours / Week | Weekly Pay Owed | Weekly Credited Pay | # of Weeks | Unpaid Amount |
|---|---|---|---|---|---|---|---|---|
| | | | **Full Week Periods** | | | | | |
| Sunday 3/28/2021 | Saturday 9/25/2021 | 71.5 | 40 | 31.5 | $1,308.75 | $1,000.00 | 26 | $8,027.50 |
| Sunday 10/3/2021 | Saturday 10/30/2021 | 101.5 | 40 | 61.5 | $1,983.75 | $1,500.00 | 4 | $1,935.00 |
| | | | **Partial Week Periods** | | | | | |
| **Period Start** | **Period End** | **# of Hours**[1] | **Regular Hours** | **Overtime Hours** | **Total Pay Owed** | **Credited Pay**[2] | | **Unpaid Amount** |
| Monday 3/22/2021 | Saturday 3/27/2021 | 57 | 40 | 17 | $982.50 | $797.20 | | $185.30 |
| Sunday 9/26/2021 | Thursday 9/30/2021 | 54.5 | 40 | 14.5 | $926.25 | $762.24 | | $164.01 |
| Friday 10/1/2021 | Saturday 10/2/2021 | 29 | 0 | 29 | $652.50 | $428.57 | | $223.93 |
| | | | | | | | **Total Amount Owed** | **$10,535.74** |

---

[1] The first partial week in this chart did not include a Sunday, and Plaintiff alleges that during this period, in which he worked 71.5 hours per week, he worked 14.5 hours on Sundays.  See ECF No. 1 ¶ 44.  The second partial week in this chart did not include a Friday or Saturday, and Plaintiff alleges that during this period, in which he worked 71.5 hours per week, he worked 17 combined hours between those two days.  See id.  Plaintiff alleges that he worked 14.5 hours each day during the third partial week in this chart.  Id. ¶ 45.

[2] Absent contrary guidance from the parties, the Court credits Defendants with having paid Plaintiff during these partial week periods a pro rata portion of Plaintiff's alleged weekly wages:  (i) $1,000 * ( ( 57 hours worked ) / ( 71.5 hours typically worked ) ); (ii) $1,000 * ( ( 54.5 hours worked ) / ( 71.5 hours typically worked ) ); and (iii) $1,500 * ( ( 29 hours worked ) / ( 101.5 hours typically worked ) ).